ALVIN COOLEY,

                Petitioner,

v.                                                     Case No. 25-cv-0478-bhl

JOY TASSLER,[1]

                Respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

In 2018, a Milwaukee County jury found Petitioner Alvin Cooley guilty on an array of criminal charges, including battery, criminal damage to property, disorderly conduct, two felony counts of fleeing or eluding an officer, three misdemeanor counts of bail jumping, three felony counts of second-degree recklessly endangering misdemeanor battery, and misdemeanor disorderly conduct for fleeing police. In postconviction proceedings and on direct appeal, Cooley contended that his Sixth Amendment rights were violated when the trial court removed him from the courtroom for a portion of his trial due to fears he would continue erratic and disruptive behavior. The Wisconsin Court of Appeals later affirmed his conviction and the Wisconsin Supreme Court denied his petition for review. Cooley then filed a petition for writ of habeas corpus under 28 U.S.C. §2254. Because Cooley has not established that he is entitled to habeas relief, his petition will be denied.

## BACKGROUND[2]

In 2015, the State of Wisconsin charged Cooley with multiple domestic abuse offenses after the mother of his children, Mary, reported that he had punched her in the face, threatened to kill her, and intentionally damaged her property. (ECF No. 12-7 ¶2.) Cooley failed to appear for

---

[1] Cooley filed his habeas petition while incarcerated at Kettle Moraine Correctional Institution, where Joy Tassler is Warden. (*See* ECF No. 12 at 1 n.1.) Accordingly, the Court substitutes Tassler as the appropriate Respondent in this matter, pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases and Federal Rule of Civil Procedure 25(d).

[2] These background facts are based on the Wisconsin Court of Appeals' decision affirming Cooley's conviction. (ECF No. 12-7.) In deciding a habeas petition, the Court presumes the facts set forth by the state courts are correct. 28 U.S.C. §2254(e)(1). The petitioner has the burden of rebutting that presumption by "clear and convincing evidence." *Id.*

a court hearing, leading to a second case charging him with bail jumping. (*Id.* ¶3.) The State added a third set of charges after further incidents, including several alleged physical assaults and Cooley's flight from police in a car that contained his two children. (*Id.* ¶4.)

Cooley was tried in a consolidated proceeding involving all three cases beginning on November 26, 2018. (ECF No. 12-11.) During the prosecution's direct examination of Mary, the proceedings were interrupted when Cooley exclaimed in front of the jury: "I'm not going to stand around and watch her kill me for my kids' sake. This is a bunch of bologna." (ECF No. 12-7 ¶5.) The judge excused the jury and admonished Cooley to remain silent and not disrupt the testimony. (*Id.* ¶6.) The Court warned that if he had another outburst, he would be removed from the courtroom. (*Id.*) In response, Cooley would not promise to comply but indicated he understood he would be removed if he engaged in similar misconduct. (*Id.*) The prosecution then completed Mary's direct examination without incident, and defense counsel began (but did not complete) her cross-examination before the court adjourned proceedings for the day. (*Id.* ¶7.)

Before Mary's testimony could resume the next morning, Cooley got into a dispute with courthouse deputies over his clothing. For reasons that are not clear, the clothes Cooley had intended to wear were not provided to him. (*Id.* ¶8.) With help from Cooley's counsel, the deputies located an alternate set of clothing, but Cooley remained upset, took off the shirt he was provided, and refused to put it back on. (ECF No. 12-13 at 6:24–7:13.) He insisted that he be allowed to appear in court wearing only a t-shirt that bore the words "Milwaukee County XL." (*Id.* at 9:12–19.) The judge expressed concern that the t-shirt could lead jurors to realize that Cooley was in custody, potentially prejudicing him, but Cooley refused to relent, even after urging from the judge, deputies, and his own counsel. (*Id.* at 9:20–11:17.) The matter finally resolved when the Court delayed the proceedings to allow the deputies to retrieve Cooley's clothes from the prior day. (*Id.* at 12:1–19.)

While the clothes were being retrieved and Cooley was changing, a deputy explained to him that he had been labeled "high risk" because of his prior outburst, and deputies would be strapping a shock device on him. (*Id.* at 13:3–13.) The deputy told Cooley that if he had another outburst, he would be shocked. (*Id.*) Cooley responded, "That's ok. I'll do that in front of the jury." (*Id.*; ECF No. 12-7 ¶9.) Considering this a threat to further disrupt the proceedings, the deputy informed the judge and suggested that Cooley be removed from the courtroom. (ECF No. 12-7 ¶9.)

While the Court dealt with the deputy's concerns, another deputy informed the jury that the trial was delayed. In response to the news, several jurors asked if Cooley was causing problems. (*Id.* ¶10.) The deputy tactfully replied that she did not know, returned to the courtroom, and informed the judge of the juror's comments and her response. (*Id.*) Meanwhile, another deputy informed the judge that Cooley's behavior was "escalating" and that he was "getting more aggressive." (*Id.*)

Deputies then returned Cooley to the courtroom secured in a high-risk wheelchair with a "stun-belt" strapped to his leg. (*Id.* ¶11.) The judge, counsel, and the deputies discussed ways to address the situation. (*Id.*) The deputy reiterated his view that Cooley should be removed, and the judge observed that the "professionals" were of the view that Cooley needed to be physically removed and placed in a different area due to concerns that he would act out in front of the jury, necessitating activation of the stun-belt. (*Id.*) Defense counsel indicated that he wanted Cooley present, attributing Cooley's statements to "bravado" and opining that Cooley had no real intention of following through on his threats. (*Id.* ¶12.) Counsel asked that Cooley not only remain in the courtroom but also be seated in a regular chair, rather than the high-risk wheelchair. (*Id.*)

The judge ultimately credited the deputy's statements and, fearing further disruption, ordered Cooley removed from the courtroom. (*Id.* ¶13.) To explain his absence, the Court instructed the jury that Cooley had "chose[n] not to be present for the remainder of the morning's session of this trial." (*Id.*) Trial then proceeded, with the completion of Mary's testimony and the examinations of a lay witness and four law enforcement witnesses. (*Id.* ¶14.)

Cooley returned to the courtroom for the afternoon session and the state rested its case. (ECF No. 12-13 at 79:21–82:20.) The defense then proceeded with its case with Cooley present, and both sides made closing arguments. (ECF No. 12-7 ¶15; ECF No. 12-13 at 87:16–17.) The jury ultimately found Cooley guilty of all charges. (ECF No. 12-7 ¶15.)

Cooley filed a motion for postconviction relief, raising two issues related to his removal from the courtroom. (*Id.* ¶16.) He first argued that trial counsel had been constitutionally ineffective by failing to object to his removal. (*Id.*) He also argued the trial court committed error by failing to conduct a proper colloquy before removing him. (*Id.*) After an evidentiary hearing, the trial court denied the motion, concluding that while his removal from the courtroom had violated his right to be present for trial, any violation was harmless. (*Id.* ¶17.) The court also

concluded that Cooley's right to the effective assistance of counsel was not violated because, while trial counsel's performance was deficient, Cooley had not been prejudiced. (*Id.*)

The Wisconsin Court of Appeals affirmed the lower court's ruling. (*Id.* ¶18.) It assumed without deciding that Cooley's Sixth Amendment Confrontation Clause rights were violated by his exclusion from the courtroom but agreed with the trial court that any potential error was harmless. (*Id.* ¶¶18–26.) The appellate court explained that Cooley had been present for all of Mary's direct examination and a portion of her cross-examination, giving him the opportunity to point out to trial counsel any misleading testimony or any additional topics on which counsel should question her. (*Id.* ¶23.) The court of appeals further determined that the jury had credited Mary's testimony and would have done so even if Cooley had been present for the second morning of trial. (*Id.*) As for the remaining witnesses whose testimony Cooley missed, all had testified only briefly and simply relayed their observations of the events, the aftermath of those events, or, in the case of the lay witness, the events that prompted him to call the police. (*Id.* ¶24.) None of the witnesses knew Cooley and no one saw him at any of the crime scenes. (*Id.*) Moreover, Cooley had not identified any material information that he could have provided trial counsel concerning these witnesses' testimony if he had been present. (*Id.*)

The court of appeals also rejected Cooley's argument that because the jurors asked if he was acting up again when they were informed the trial was delayed, they must have made a negative inference from his absence. (*Id.* ¶25.) The state court explained that any potential negative inference was speculative and unsupported by the record and, in any event, would have been brought on by Cooley's own actions. (*Id.*) On March 13, 2025, the Wisconsin Supreme Court denied Cooley's petition for review. (ECF No. 12-10.)

## LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) limits a federal court's ability to grant habeas corpus relief. To obtain relief under AEDPA, a petitioner must show that "he is in custody in violation of the Constitution or laws or treaties of the United States." *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011) (quoting 28 U.S.C. §2254(a)). With respect to a claim adjudicated on the merits in state court, a habeas petition can be granted only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." 28 U.S.C. §2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted). It is intentionally difficult to meet. *See Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

A state court decision is "contrary to . . . clearly established Federal law" within the meaning of Section 2254(d)(1) if the state court "applie[d] a rule different from the governing law set forth" by Supreme Court precedent or when the state court "decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). A state court decision involves an "unreasonable" application of established precedent within the meaning of Section 2254(d)(1) when the "state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Under either prong, it is not enough that "a federal court believes the state court's determination was incorrect" or erroneous. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Rather, the state court's application of clearly established law must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)). The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

## ANALYSIS

Cooley maintains that he is entitled to habeas relief because the state violated his right to confront his accusers at trial. (ECF No. 1 at 6; ECF No. 9 at 1.) The Wisconsin Court of Appeals assumed that the trial court violated Cooley's Confrontation Clause rights but determined the violation was harmless error. Cooley disputes the Wisconsin Court of Appeals' harmless error ruling and insists his removal from the courtroom during his trial entitles him to habeas relief. (ECF No. 1 at 6.)

When a trial court ruling violates a defendant's Confrontation Clause rights, the result of the trial will nevertheless stand if the erroneous ruling was harmless. *See United States v. Jenkins*, 128 F.4th 885, 891 (7th Cir. 2025); *see also Coy v. Iowa*, 487 U.S. 1012, 1021 (1988) (holding

that a denial of face-to-face confrontation is subject to harmless-error analysis). The prevailing Supreme Court precedent for determining whether a trial error was harmless is *Chapman v. California*, 386 U.S. 18 (1967). In *Chapman*, the Supreme Court held that the state must prove "beyond a reasonable doubt" that an error was harmless to avoid a constitutional violation. *Id*. at 24. Under AEDPA, a habeas petitioner faces an even higher burden and must show both that the trial court's error had a "substantial and injurious influence" on the verdict *and* that the state court unreasonably applied *Chapman*. *See Brown v. Davenport*, 596 U.S. 118, 122 & 127 (2022) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

In *Brecht*, a case arising in Wisconsin and predating AEDPA, a habeas petitioner argued that his due process rights were violated when the prosecution argued that his pre-trial silence, as discussed during his cross-examination, was evidence of his guilt. 507 U.S. at 625. The Wisconsin Supreme Court rejected his appeal, concluding that, while the prosecution's conduct had violated his rights, the state had shown under the *Chapman* standard that the error was harmless beyond a reasonable doubt. *Id.* at 626. On habeas, the district court granted relief, holding that the state had not shown the error was harmless beyond a reasonable doubt and setting aside the conviction. *Id.* The Seventh Circuit reversed, concluding that while *Chapman* supplied the appropriate standard at the state court level, it did not apply on federal habeas, and that the petition was instead required to show that the constitutional violation had a substantial and injurious effect or influence on the jury's verdict. *Id.* at 627. The Supreme Court granted certiorari and affirmed, emphasizing that a federal court's undoing of a final state court judgment is an "extraordinary remedy," reserved only for "extreme malfunctions in the state criminal justice system." *Id.* at 633–34. Accordingly, the habeas petitioner bears the burden of establishing that the constitutional violation had a substantial and injurious effect on the jury's verdict. *Id.* at 637.

The Supreme Court recently confirmed that *Brecht* is still good law and that habeas petitioners must satisfy both *Brecht* and overcome AEDPA's substantial deference to state court rulings in order to obtain relief. *Davenport*, 596 U.S. at 122. In *Davenport*, the defendant argued that his Fourteenth Amendment Due Process Clause rights were violated when he was shackled throughout trial within the jury's sight without any finding of a "special need." *Id.* at 123–24. The state court of appeals rejected his claim, concluding that the prosecution had proved the error harmless based on juror testimony that the evidence overwhelmingly established his guilt. *Id.* at 124–25. The defendant then petitioned for federal habeas relief. *Id.* Applying AEDPA, the district

court denied his petition, explaining that the state court had not unreasonably applied *Chapman*. *Id.* The Sixth Circuit reversed, holding that *Brecht* trumped AEDPA and provided the appropriate standard for reviewing a state court's harmless-error analysis on habeas. *Id.* at 125–26. The Supreme Court granted certiorari and reversed the Sixth Circuit, holding that a federal court may only grant habeas relief if the petitioner satisfies both *Brecht* and AEDPA. *Id.* at 134.

Accordingly, to obtain habeas relief, Cooley must first satisfy *Brecht* by showing that his exclusion from the trial had a substantial and injurious effect on the jury. *See* 507 U.S. at 637; *Davenport*, 596 U.S. at 122. He must also satisfy AEDPA by showing that the state court's harmless-error analysis was an unreasonable application of *Chapman*. *See Davenport*, 596 U.S. at 144. This is an uphill battle: *Chapman*'s rule is "general," and the state court has significant leeway when applying it. *Id.* (quoting *Renico*, 559 U.S. at 776). To obtain habeas relief, Cooley must convince the Court "that *every* fairminded jurist" applying *Chapman* would reach a different conclusion. *Id.*

Cooley has not met this high burden. He simply argues that his rights were violated and therefore contends that he is entitled to habeas relief. (ECF No. 16 at 1.) He has not explained why any error had a substantial or injurious influence on the verdict. (*See id.*) Nor has he shown that no reasonable jurist applying *Chapman* would reach the same conclusion as the state court.

The record confirms that the Wisconsin Court of Appeals identified the correct standard and specifically determined that "[i]t is clear beyond a reasonable doubt that a rational jury" would have convicted Cooley even if he had been present during the second morning of his trial. (ECF No. 12-7 ¶26.) It identified four reasons for its conclusion. First, the state had overwhelming evidence against Cooley, including Mary's description of events, confirmed by law enforcement and lay witnesses, and documentary and photographic evidence of Mary's injuries, the property damage, and the vehicles involved in the police chases. Second, Cooley's defense was premised on arguing that Mary was biased or mistaken, but he was present for all of her direct examination and a portion of her cross-examination, allowing him to point out misleading testimony and questions he wanted counsel to ask. Third, the remaining witnesses did not know Cooley and did not testify to seeing him at the crime scenes, and Cooley did not explain what information he could have provided had he been present. Fourth, if the jury did have a negative inference about Cooley, it was based on his own actions, and he alone bore that responsibility. (*Id.* ¶¶22–26.)

The state court's analysis was not an unreasonable application of *Chapman*.  It emphasized that the government had a strong case, that Cooley remained present for the majority of the trial, that he did not have anything he would have told his counsel to do had he been present the morning of the second day of trial, and that any negative inferences the jury had about him were based on his actions during the first day of trial, not his absence.  Cooley's habeas challenge for a violation of the Confrontation Clause therefore fails because he has not shown that the state court's harmless-error analysis was unreasonable.[3]

## CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the rules Governing Section 2254 Cases, the Court must consider whether to issue a certificate of appealability.  A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. §2253(c)(2).  The standard for making a "substantial showing" is if "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).  The Court declines to issue a certificate of appealability because reasonable jurists could not debate the Court's decision to deny the petition on the merits.

---

[3] Putting the harmless-error analysis aside, it is also far from clear that the trial court violated Cooley's right to face his accusers.  Although the Sixth Amendment guarantees every defendant the right to be present at trial, that right can be waived explicitly or implicitly through misconduct.  *Illinois v. Allen*, 397 U.S. 337, 338 (1970); *United States v. Benabe*, 654 F.3d 753, 768 (7th Cir. 2011).  A defendant impliedly waives his right to attend trial if "after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful that his trial cannot be carried on with him in the courtroom."  *Allen*, 397 U.S. at 343.  Here, Cooley disrupted the first day of trial by speaking during Mary's testimony, and, even after the trial court warned him, his erratic behavior continued.  Given that he was put on notice of the consequences of further misbehavior and yet still refused to make any "promises" about his future conduct, Cooley's belligerent actions would appear to constitute an implicit waiver of his right to be present at trial.

## CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Alvin Cooley's Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** because the Court does not find that a reasonable jurist could conclude that the petition should have been resolved in a different manner. *See Slack*, 529 U.S. at 484.

Dated at Milwaukee, Wisconsin on June 29, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge